IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

NATHANIEL O. SMITH,                )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )    No. 08 C 3823
                                   )
JOHN E. POTTER, Postmaster General,)
United States Postal Service,      )
                                   )
        Defendant.

                   **MEMORANDUM OPINION AND ORDER**

    Plaintiff Nathaniel O. Smith ("Smith"), a postal worker, filed a seventeen count *pro se* complaint against his current employer, the United States Postal Service ("USPS"), alleging discrimination based on race, sex, color, age, and disability under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* (the "Rehabilitation Act").  The complaint also includes several counts of retaliation premised on plaintiff's 2003 Equal Employment Opportunity ("EEO") activity.  For the following reasons, summary judgment is granted.

                                  I.

    Plaintiff is an African-American male, employed by USPS in Maywood, Illinois.[1]  Plaintiff started work in 1984 as a letter

---

[1] I take the relevant facts primarily from the parties' Local Rule ("LR") 56.1 statements and supporting evidence.  LR 56.1

carrier. In 1986, he suffered a job-related injury (herniated disc, lower back), that resulted in permanent medical restrictions on the type of work he could perform. To date, there has been no improvement in plaintiff's medical condition. After the injury, plaintiff was unable to perform the core duties of a letter carrier and was given light-duty assignments.

In March 1996, USPS offered plaintiff a "modified rehabilitation" assignment, which he accepted. The assignment entailed "administrative and installation of labels into carrier cases" and "computer processes and updating of DPS software for carrier routes." Those duties were performed with the following limitations: "no lifting greater than 10 lbs. occasionally and lifting a negligible amount of weight frequently"; "no casing"; "no overhead lifting"; and "no prolonged standing." The described tasks were usually performed by clerk craft employees as opposed to letter carriers.

Sometime later, plaintiff was given a fitness for duty

---

requires that statements of facts contain allegations of material fact and that factual allegations be supported by admissible record evidence. *Id.* The Seventh Circuit repeatedly has confirmed that a district court has broad discretion to require strict compliance with LR 56.1. *See Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, I have not considered that statement. *See Malec v. Sanford*, 191 F.R.D. 581, 583-85 (N.D.Ill. 2000). Additionally, where a party improperly denied a statement of fact by failing to provide adequate or proper record support for the denial, I deem that statement of fact admitted. LR 56.1(a).

examination during which he self-reported a history of severe headaches, loss of hearing, neck stiffness, frequent colds, chest pain, shortness of breath, a heart abnormality, leg cramps, painful or swollen joints, and a lower back disorder. In February 1999, plaintiff was presented with another modified job offer for the same clerical work, with additional tasks and restrictions: "answer telephone and convey messages as needed"; "hand stamping return mail"; "additional administrative duties (within your medical restrictions)"; "no driving." Plaintiff accepted the offer.

After additional medical exams, in April 2000, USPS offered yet another modified work assignment. Again, the job duties were similarly clerical (*e.g.*, "installation of labels into carrier case", "sedentary hand stamping and proper handling of individual CMU/Nixie mail pieces at desk") but included more physical restrictions (*e.g.*, "no kneeling, bending/stooping, twisting, pulling/pushing, [or] driving"). This time plaintiff refused the offer because USPS wanted to re-classify him into the clerk craft. Although he agreed to do the stated clerical work, he wanted to remain a letter carrier. USPS deemed plaintiff's refusal invalid because he could no longer perform the duties of a letter carrier and on March 24, 2001, he was involuntarily assigned to the clerk craft.[2] About a year later, USPS notified plaintiff that his

---

[2] Evidence in the record suggests plaintiff should have been re-assigned to the clerk craft in 1996 when his medical condition was declared permanent, but due to an administrative error he

3

current position was "excess" to the needs of his office and re-assigned him as a labor custodian.  He uses a device to pick up trash, and performs minimal cleaning and dusting, within the limits of his physical restrictions.

In August 2003, plaintiff filed an EEO complaint alleging race discrimination regarding a daily log-in sheet.  About a month later, he filed another EEO complaint alleging that Yolanda Ramey, a female, light-skinned, African-American, with some physical limitations, was performing clerk duties but was still in the letter carrier craft, while plaintiff had been involuntarily assigned to the clerk craft in 2001.  The record is silent as to how these two matters progressed or were resolved.

Then, in 2005, plaintiff filed three more EEO complaints – two on April 5, 2005, and a third on August 17, 2005.[3]  The April 5, 2005 complaints alleged retaliation and discrimination (race, color, sex, disability, and age) in connection with USPS's denial of plaintiff's requests for overtime work, and four instances when higher-level detail positions were given to younger, female, light-skinned African-American employees but not offered to plaintiff.  The August 2005 complaint charged retaliation and discrimination

---

remained in the letter carrier craft.  (*See* Pl.'s ASOF Ex. 13 at 1.)

[3] Neither party provides a copy of the third EEO complaint, but it is discussed in both the EEOC ALJ and appellate decisions and appears to be the basis for Counts XII-XVII.  (*See* Def.'s SOF Exs. 21, 22.)

4

based on the denial of plaintiff's June 15, 2005 request to transfer from custodian to letter carrier. At some point, these three complaints were consolidated and were considered by the EEOC together. (*See* Def.'s SOF Exs. 21, 22.) Plaintiff's federal complaint alleges discrimination and retaliation in connection with the same three employment actions.

During the EEO investigation, plaintiff identified several employees he believed were more favorably treated because they got higher level detail assignments and were allowed to remain letter carriers despite some physical limitations: Yolanda Ramey, Hernetha Jordan, Aviva Douse, and Shawn Dorsey. These women were all light- or limited-duty letter carriers, described as light-skinned, black, non-disabled, "younger" females (age unknown). The record does not explain what tasks or responsibilities the "higher-level" positions required, but the parties seem to at least agree that they were supervisor positions. With regard to the overtime issue, plaintiff explained that a younger, non-disabled, white co-worker was allowed overtime to clean floors (one of that employee's regular job responsibilities), but when plaintiff asked to do overtime work, his requests were denied.

## II.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

5

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party shows that there is no genuine issue of material fact, the burden of proof shifts to the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). Further, if the facts asserted by a party are merely self-serving in a conclusory way or mere hearsay, then those assertions cannot serve as the basis for supporting or defeating an otherwise proper motion for summary judgment. *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (affidavits that are not based on personal knowledge and that state only speculation "fail to thwart summary judgment").

III.

Each of the complaint's seventeen counts are premised on one of three alleged employment actions taken by USPS, namely: 1) the

6

denial of plaintiff's overtime requests, while a white co-worker was once permitted to work eight hours of overtime (Counts I-V); 2) four female light-skinned black co-workers were given higher-level detail assignments and plaintiff was not (Counts VI-XI); and 3) plaintiff was denied a transfer from the clerk craft to the letter carrier craft, while four female light-skinned black letter carriers were allowed to remain in the letter carrier craft (Counts XII-XVII). All of plaintiff's discrimination and retaliation claims require that plaintiff suffer from an adverse employment action. *See Garg v. Potter*, 521 F.3d 731 (7th Cir. 2008)(Rehabilitation Act); *Burks v. Wisconsin Dept. of Trans.*, 464 F.3d 744, 758 (7th Cir. 2006)(retaliation); *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006)(Title VII and ADEA). Accordingly, the first five counts fail because the denial of overtime in this case does not constitute an adverse action.

The Seventh Circuit has explained that materially adverse employment actions tend to fall into three categories. *See Lewis v. City of Chicago*, 496 F.3d 645, 653-54 (7th Cir. 2007). One of these categories involves actions that negatively affect compensation and financial terms of employment, which, depending on the job, can include overtime compensation. *Id.* In short, when overtime is a significant and recurring part of one's compensation, it may be actionable; while overtime consisting of transient, insignificant, irregular, or discretionary payments is not. *Id.*

7

Here, plaintiff has not provided any evidence suggesting overtime was a significant or recurring part of plaintiff's earnings. In fact, there is no evidence suggesting plaintiff ever performed overtime or that overtime was a significant portion of any USPS employee's earnings. Additionally, there is no evidence suggesting the denial of overtime affected any of plaintiff's prospective employment opportunities or his current employment relationship with USPS. *Cf. Lewis*, 496 F.3d at 654 (finding fact issue on adverse action where denial of detail opportunity affected ability to progress in career and qualify for significant overtime opportunities in the future). Without evidence of an adverse action, Counts I-V cannot survive summary judgment.

Assuming the other two employment actions are adverse, plaintiff's related Title VII and ADEA claims fail because he has not established his *prima facie* case as to the preferential treatment of non-protected, similarly situated persons.[4] *See McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Ptasznik*, 464 F.3d at 696 (7th Cir. 2006)(elements of *prima facie* Title VII and ADEA claims). In other words, plaintiff's evidence does not show that similarly situated employees, not in his protected classes, were treated better than he was treated with regard to higher-level detail assignments (Counts VI, VII, IX) or

---

[4] Neither party argues evidence of discrimination under the direct method of proof.

transfers (Counts XII, XIII, XV). A similarly situated employee is one who is directly comparable to the plaintiff in all material respects. *Atanus v. Perry*, 520 F.3d 662, 673 (7th Cir. 2002). Factors to consider include whether the employees 1) had the same job description, 2) were subject to the same standards, 3) were subject to the same supervisor, and 4) had comparable experience, education, and other qualifications. *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005).

Plaintiff identifies four USPS employees he claims were similarly situated. They all received higher-level detail assignments, but there is no evidence suggesting they requested or received any transfers. Further, at all relevant times, those four employees were limited- or light-duty letter carriers, not custodians like plaintiff. The record is silent as to their ages, respective experience and education. And there is scant evidence concerning the extent and permanency of their alleged physical limitations.[5] Plaintiff appears to rest his case on the fact that

---

[5] Plaintiff includes what appear to be modified job offers for limited duty, accepted by Yolanda Ramey. Presumably these documents were included as evidence that she was comparably disabled; however, the job offers show that unlike plaintiff, Ms. Ramey was still capable of driving, and picking-up, delivering, and sorting mail. (*See* Pl.'s ASOF Ex. 24.) There is also no evidence, other than plaintiff's statements, that Ms. Ramey's undisclosed medical condition has been declared permanent. Plaintiff also submits a signed statement from Aviva Douse that says her injury is permanent, but it does not say what the injury is or how she is limited as a result of that injury. (Pl.'s ASOF Ex. 21.) No information regarding the alleged limitations of the other two letter carriers is provided.

he used to perform some of the same clerical tasks as the identified employees before he became a custodian in 2002. But that fact alone is not sufficient evidence for a reasonable jury to conclude the cited employees were similarly situated in "all material respects."[6]

Even if plaintiff could prove his *prima facie* case, his Title VII and ADEA claims still fail because he cannot show USPS's stated reasons for denying his transfer and not offering him higher-level detail assignments were pretext for discrimination. The undisputed evidence shows that, due to his severe medical restrictions, plaintiff could not perform the core duties of a letter carrier. He does not deny this. Instead, plaintiff contends that because he can perform some clerical duties and USPS allowed him to do clerical work as an accommodation in the past that he should be transferred back to the carrier craft to do clerical work again. This is not evidence of pretext. *See Hobbs v. City of Chicago*, 573 F.3d 454, 461 (7th Cir. 2009)(explaining that pretext is a lie – a phony reason). There is also no evidence of pretext relating to

---

[6] Much of plaintiff's remaining evidence and argument focuses on matters unrelated to this case, namely his 2001 transfer from letter carrier to clerk and 2002 excess transfer from clerk to custodian. These earlier transfers, which appear to be the subject of plaintiff's 2003 EEO complaint, are based on distinct acts outside the scope of the 2005 EEO complaints at issue and are not relevant. *See e.g., Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 920 (7th Cir. 2000)(employer's decision to terminate was separate and distinct act from subsequent decision not to rehire and therefore not "reasonably related" to EEOC charge).

10

USPS's stated reason for not offering higher-level detail assignments to plaintiff. USPS claims that he never requested supervisory assignments, and when other non-custodial, data entry work was offered to him, he refused it. Plaintiff admits refusing the data entry work and does not offer evidence disputing USPS's contention that he did not ask for the higher-level detail work at issue. Accordingly, these Title VII and ADEA discrimination claims cannot survive summary judgment.

Next, in order to sustain his disability discrimination claims (Counts VIII and XIV), plaintiff must show he 1) was disabled, 2) was otherwise qualified to perform the essential functions of his job, and 3) suffered an adverse employment action because of his disability. *Garg v. Potter*, 521 F.3d 731 (7th Cir. 2008). But plaintiff has not shown he was otherwise qualified to perform higher-level detail assignments or letter carrier duties, with or without accommodation. *Garg*, 521 F.3d at 736-37 (7th Cir. 2008)(a worker who cannot do the job even with a reasonable accommodation has no claim under the Rehabilitation Act). As noted above, USPS gave plaintiff an accommodation and allowed him to perform clerk duties before officially transferring him out of the carrier craft in 2001. Contrary to plaintiff's contentions, that does not mean that he was able to perform the essential functions of a letter carrier with an accommodation. In fact, the evidence shows he cannot perform the core duties of a letter carrier. Plaintiff also

fails to provide any evidence or argument that he was a qualified person with a disability with regard to the higher-level detail assignments. The record is silent as to what duties and responsibilities were required for those positions and plaintiff does not provide evidence suggesting he could perform the undefined duties with or without an accommodation.[7]

Even if he could show he was a qualified individual with a disability, for the reasons already explained, there is no material issue of fact as to whether USPS's reasons for denying his transfer or failing to offer him these detail assignments were pretext for discrimination. The same is true of the remaining retaliation claims (Counts X, XI, XVI, and XVII), which are based on the same two alleged adverse actions. Assuming plaintiff could make out his *prima facie* case for retaliation on these counts, they still fail because there is no evidence that USPS's non-retaliatory reasons for its actions were pretext.[8]

---

[7] The only information I could find was that some or all of the jobs were "204B" supervisor positions, one of which involved "OWCP" specialist work plaintiff believed was "sit down" work.

[8] Plaintiff also argues he was involuntarily transferred out of the letter carrier craft in 2001 in retaliation for not signing the April 2000 modified job offer. This retaliation claim is not considered here as it was not included in plaintiff's EEO charge or his federal complaint. (*See* Pl.'s Resp. 14-15.)

IV.

For the foregoing reasons, defendant's motion for summary judgment is granted in full. This case is dismissed.

**ENTER ORDER:**

*[signature]*

**Elaine E. Bucklo**
United States District Judge

Date: March 26, 2010